# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Andrea Cameron**<br>18553 Sierra Springs Sq.<br>Leesburg, VA 20176<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>**Antony J. Blinken,**<br>Secretary of State,<br>U.S. Department of State<br><br><br>　　　　Defendant. | Case No.:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Andrea Cameron by and through undersigned counsel, files this Complaint against Defendant Antony J. Blinken, Secretary, Department of State ("Defendant") for violations of Title VII for discrimination and hostile work environment.

## NATURE OF ACTION

1. This is an action to recover damages for Defendant's unlawful discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

2. Plaintiff Andrea Cameron is a black Foreign Service Officer with more than 17 years of service with Defendant.

3. Ms. Cameron had a successful career until Virginia Blaser became her supervisor.

4. Upon becoming Plaintiff's supervisor, Ms. Blaser reduced her role and responsibilities and denied her career-enhancing opportunities.

5. Ms. Blaser similarly reduced the responsibilities of other black employees while at the same time enhancing the duties of her white subordinates and issuing them performance awards.

6. Further, Ms. Blaser demonstrated a racial animus toward black people when she mocked Plaintiff using racist stereotypes and degraded other high level black speakers.

7. Ms. Blaser's actions, described in more detail below, demonstrate that she reduced Plaintiff's substantive responsibilities and harmed her career because she is black in violation of Title VII of the Civil Rights Act.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

9. Pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district as the relevant employment records are maintained in Washington, D.C. by the Defendant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.9.

11. Plaintiff filed a formal equal employment opportunity ("EEO") complaint with Defendant's EEO office on August 13, 2018.

12. Plaintiff requested a hearing before an EEOC Administrative Judge following the Defendant's completion of its investigation of Plaintiff's formal EEO complaint.

13. On September 2, 2021, Plaintiff's case was dismissed by an EEOC Administrative Judge.

14. On October 12, 2021, Plaintiff received a Final Decision implementing the Administrative Judge's decision.

15. Plaintiff is filing this complaint less than 90 days after receiving a final agency decision, in accordance with 29 C.F.R. § 1614.407(a).

## PARTIES

16. Plaintiff is currently a resident of Leesburg, Virginia, who was previously employed by Defendant in Cape Town, South Africa.

17. During the relevant period, Plaintiff was Defendant's employee within the meaning of Title VII and entitled to protections of the same.

18. Defendant, Antony J. Blinken is the Sectary of State for the Department of State and is named in his official capacity. The Department of State is a federal agency located in Washington, D.C.

## STATEMENT OF FACTS

### *Plaintiff is a member of a protected class.*

19. Plaintiff is a black female.

20. Virginia Blaser, the former Consul General who took adverse actions against Plaintiff, is a white female.

### *Plaintiff's Employment with Defendant Under Consul General Teddy Taylor.*

21. Plaintiff served as the Economic Officer at the US. Consulate in Cape Town, South Africa between September 2015 and August 2018.

22. Plaintiff had a 02 ranking, one of the highest-ranking officers at the Cape Town Consulate.

23. Plaintiff was the primary liaison with the South African parliament on economic issues and events.

24. From September 2015 to August 2017, Plaintiff reported to Mr. Teddy Taylor (black).

25. While reporting to Mr. Taylor, Plaintiff was responsible for covering all economic issues including those affecting American business, foreign policy, energy, environment, trade, and investment in the Consular district (Northern, Western and Eastern Capes).

26. Mr. Taylor and Plaintiff developed her Work Requirements Statement as is required at the beginning of every rating period.

27. Because Plaintiff was focused on economic issues, her performance was reviewed by the Economic Counselor in Pretoria.

### *Consul General Blaser Marginalized and Excluded Plaintiff and Other Black Officers.*

28. Beginning in August 2017, Plaintiff reported to the Consul General, Virginia Blaser (white).

29. Almost immediately, Ms. Blaser began to marginalize the black employees and diminish their accomplishments.

30. Ms. Blaser lavished effusive praise on her white subordinates, but not her black employees. Instead, Ms. Blaser publicly berated her black subordinates.

31. Ms. Blaser sought responses to economic questions from white employees, rather than from Plaintiff.

32. Ms. Blaser copied Charles Lobdell, a white officer, on economic related correspondence, allowed him to review her cables, gave him the opportunity to participate in economic matters, meetings and visits, and sometimes presented him as the Economic Officer even though Plaintiff was available.

33. Mr. Lobdell was the Political Officer. At the State Department, it is customary for the political and economic officers to support each other's work. While Ms. Blaser copied Mr. Lobdell in Plaintiff's portfolio, she did not loop Plaintiff into political matters or have her clear his cables.

34. Ms. Blaser excluded Plaintiff from communications regarding economic matters.

35. Ms. Blaser isolated Plaintiff from her colleagues by not including her in events and denigrating her work performance.

36. During her first week at Post, Ms. Blaser reacted to Plaintiff's comprehensive and substantive response regarding a conversation she had had on a plane with high level officials by glaring at Plaintiff. She never responded to Plaintiff's feedback.

37. Also during her first week, Ms. Blaser removed the third highest ranking officer, Kim McClure, from weekly senior staff meetings. Ms. McClure is black.

38. Ms. Blaser publicly discouraged Ellen Masi from writing Ms. McClure an award nomination.

39. Ms. Blaser claimed that Ms. McClure should not get an award because she was only "covering" roles. However, Ms. Blaser gave an award to Sally Meyers, a white officer, who was filling in as Consular Chief for the same amount of time that Ms. McClure covered three jobs.

40. Ms. Blaser wrote Meritorious Step Increase Awards for two employees during her first year as Consul General. Both recipients were white officers.

### *Consul Blaser Reassigned Plaintiff's Portfolio.*

41. Almost immediately upon her assignment as Consul General for Cape Town, Ms. Blaser removed Plaintiff's responsibility for supporting the onboarding and briefing of the new CG and political officer to ensure they possessed the necessary knowledge to be successful in their positions. This goal was part of Plaintiff's Work Requirements Statement, developed before Ms. Blaser came to post.

42. In October 2017, Ms. Blaser reassigned Plaintiff's role as control officer to a white employee, Mr. Lobdell, while Plaintiff was on leave.

43. Mr. Lobdell had just arrived at the Cape Town post when Ms. Blaser assigned him as control officer for Secretary Perry's visit.

44. When Plaintiff returned from leave, Ms. Blaser complained that Mr. Lobdell had not made sufficient progress.

45. Based on her experience and contacts in the position, Plaintiff assisted Mr. Lobdell in planning for an upcoming visit. She reached out to her contact at Exxon-Mobil to inquire about a reception they were hosting.

46. Ms. Blaser berated Plaintiff for offering Mr. Lobdell help with the assignment, even though it was within her job description to do so. She told Plaintiff that she should have asked for permission to make the contact and that Mr. Lobdell was in charge of the visit and that Plaintiff should go to him.

47. Blaser required Mr. Lobdell, a white officer, to review all of Plaintiff's cables despite having less experience.

48. Blaser reassigned Plaintiff to work as a control officer for Secretary Perry's wife, which consisted mostly of visiting shopping markets and did not entail substantive work or responsibility.

49. Blaser then assigned Plaintiff to serve as a notetaker for one of the meetings during Secretary Perry's visit and as a site officer for a lunch meeting. Again, this was not a substantive responsibility.

50. When Plaintiff returned from leave during December 2017, Plaintiff learned that Ms. Blaser had permanently reassigned all control officer duties to Mr. Lobdell.

51. Plaintiff told Ms. Blaser she wanted to return to the position, but Ms. Blaser stated she wished for Mr. Lobdell to remain in control.

52. Plaintiff inquired with Mr. Lobdell about his interest in such economic duties. Mr. Lobdell told Plaintiff that he was not interested in this type of work and did not know why Ms. Blaser was assigning him those tasks.

53. Under Mr. Taylor, Plaintiff was responsible for following all economic issues in the South African Parliament, for conveying U.S. policy stances to the legislature, managing the Consulate's $700,000 small grants program that assists HIV/AIDS communities and the program manager.  Plaintiff was also responsible for strengthening outreach to parliamentary committees, strengthening outreach to minorities working the wine industry, reporting on operation Phakisa, engaging the tech sector in the Western Cape and renewable energy efforts.

54. Despite this official work requirement, Ms. Blaser told Plaintiff that she should not attend parliament sessions. Instead, she had Mr. Lobdell only attend and do parliament write ups. This affected Plaintiff's ability to follow economic legislature matters and trends and solidified Mr. Lobdell's role as Post lead on parliamentary issues.

55. Ms. Blaser continued to assign special projects to Caucasian officers, which enhanced their experience and increased their contacts with high-ranking officials. For example, Ms. Blaser tasked Thomas Bills, a white employee with organizing a July 4th event. She then excluded Plaintiff from attending the pre-event with American companies, even though she had assisted by providing names for the event and even though many of the attendees were economic contacts.

56. Ms. Blaser assigned Mr. Whitney, another white employee, creating Cape Town's Overseas Security Advisory Counsel. Ms. Blaser did not assign career-enhancing projects to Plaintiff.

### *Consul Blaser Mimicked and Denigrated Plaintiff With Racist Stereotypes*

57. On December 13, 2017, Ms. Blaser mocked Plaintiff during a staff meeting using racially stereotypical words and gestures.

58. While snapping her fingers and rolled her neck, Ms. Blaser said, in a mocking tone, "Andrea's like 'I ain't got no staff'". All of Plaintiff's colleagues observed this.

59. Plaintiff typically wore her hair tight in a ponytail. The one time Plaintiff wore her hair naturally (in an Afro), Ms. Blaser commented that it looked "funky" after asking Plaintiff if she liked that hair style.

60. Ms. Blaser often singled out black officials, criticizing how they spoke and commenting on whether or not they were "articulate."

### *Consul Blaser Demeaned High-Level Black Officials.*

61. Ms. Blaser constantly insulted her counterpart in Durban, Sherry Sykes, a black Foreign Service Officer.

62. At joint virtual meetings, Ms. Blaser told consulate staff in Cape Town that Ms. Sykes spoke horribly and that staff should not speak like her. She said this on multiple occasions.

63. During AfricaCom, a large technical infrastructure event with well-known and respected speakers, she commented that one of the African speakers was "articulate" and that another was "not articulate." She did not make these types of comments about white officials.

### *Consul Blaser Denied Plaintiff's Request to Serve on Promotion Panel.*

64. In January 2018, Plaintiff requested Ms. Blaser's approval to submit her name to volunteer to serve on the promotion board.

65. Ms. Blaser stated she was "not keen on the idea."

66. Ms. Blaser did not provide any substantive reason for her decision.

67. This was Plaintiff's primary avenue for promotion and impacted her ability to develop her career.

***Consul Blaser Permitted Only White Officers to Serve as Acting Consul General for a Week.***

68. Ms. Blaser provided the opportunity for every white FS-02 officer at the Consulate to serve as Acting Consul General for one week.  She did not offer the opportunity to any of the three FS-02 African American officers (Plaintiff, Gregory Strozier and Kimberly McClure).

69. Realizing this disparate treatment, the Deputy Principal Officer and Public Affairs Officer Ellen Masi emailed Ms. Blaser on June 21 requesting that the two black FS-02 officers be given the same opportunity.

70. Ms. Blaser disagreed and stated that everyone could not be given the opportunity serve as Acting for one week because leave schedules changed.

71. This was not true.  On the single day of July 16, 2018, Plaintiff served as Acting Consul General.

72. Ms. Blaser cut her opportunity short when Ms. Masi, a white employee, returned from leave.

73. Ms. Blaser already had Ms. Masi's leave schedule.

74. The following individuals were permitted to serve as Acting Consul General for one week in June 2018: Brian Randall; Chas Lobdell; Eli Whitney; Ellen Masi.  Each of the selected individuals are white.

75. No black employee was permitted to serve as Acting Consul General for one week.

76. Indeed, Ms. Blaser allowed a white employee at a lower grade than Plaintiff (Robert Eli Whitney) to serve as Acting Consul General for one week.

77. Allowing officers of a lower rank to serve in the role before employees at a higher rank is contrary to State Department standard practice of assigning your highest ranked, longest serving officer to fill the role.

78. Ms. McClure was the highest ranked, longest servicing officer at the Post in Cape Town.

79. In addition to rank, Plaintiff had greater experience than white officers who were selected to serve for one week. In fact, Plaintiff often handled more than one staff role at a time and did so successfully, which prepared her for the Acting Consul General role.

80. Plaintiff was harmed by being denied the opportunity to serve in the Acting Consul General role for a full week.  She lost the ability to interact with high-ranking officials including the Charge d'Affaires, who reviewed her performance.

81. She also lost the opportunity to show her leadership skills which is a key component of her appraisal and a key aspect to an officer's reputation when bidding on new assignments Unlike the white employees, she could not list this experience on her resume or job applications.

82. A promotion review panel would consider whether an officer served as Acting Consul General as a factor in promotion.

### *Consul Blaser Attempted to Derail Plaintiff's Future Promotional Opportunity*

83. Ms. Blaser wanted Plaintiff to draft an Employment Evaluation Report (EER) prior to her departure from the post.

84. An EER was not required because 120 days had not passed since the end of the last rating period.

85. Promotion panels review officer's EERs to determine whether the officer should be promoted to the next level.

86. An EER that indicates a decline in substantive responsibilities would diminish Plaintiff's chances of promotion.

87. Due to Ms. Blaser's discriminatory diminution of her duties, Plaintiff's EER would reflect a loss of substantive responsibility and thus decrease her likelihood of promotion.

88. The EER would also give Ms. Blaser the opportunity to include negative comments or wording that would negatively affect Plaintiff's rankings by the promotion boards and lower her chances for promotion.

89. Plaintiff contacted Human Resources, who confirmed that an EER was not required in Plaintiff's situation.

90. Ms. Blaser continued to pressure Plaintiff to draft one, even after Plaintiff informed her that she had communicated with Human Resources and learned it was unnecessary.

91. Plaintiff felt so intimated by Ms. Blaser's demands that she left her post earlier than planned so as not to risk the negative comments in an EER that she expected from Ms. Blaser.

92. Following her tenure under Ms. Blaser, Plaintiff was forced to take Leave without Pay for one year due to the emotional distress and harm caused by Ms. Blaser.

## COUNT I
(42 U.S.C. § 2000e–Discrimination on the Basis of Race)

93. Plaintiff repeats and realleges paragraphs 1–92, above, as if fully set forth herein.

94. Defendant discriminated against Plaintiff on the basis of race.

95. By and through its conduct, Defendant violated Title VII. Defendant's actions were intentional, reckless, and malicious.

96. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT II

**(**42 U.S.C. § 2000eet seq.–Hostile Work Environment on the Basis of Race)

97. Plaintiff repeats and realleges paragraphs 1–96, above, as if fully set forth herein.

98. Defendant subjected Plaintiff to harassment and a hostile work environment because of her race.

99. By and through its conduct, Defendant violated Title VII.

100. Defendant's actions were intentional, reckless, and malicious.

101. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor against Defendant and award her damages including back pay, front pay, lost benefits, liquidated damages, consequential damages, punitive damages, pre- and post-judgment interest, costs, the increased tax burden on any award, reasonable attorneys' fees, any other relief allowed under the above-referenced statutes, and any other relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

Respectfully submitted,

Alan Lescht & Associates, P.C.
By:  /s/
Ellen Renaud (#479376)
Katherine Lease (#1722844)
1825 K Street NW, Suite 750
Washington, DC 20006
Tel: (202) 463-6036
Fax: (202) 463-6067
Ellen.renaud@leschtlaw.com
Katherine.lease@leschtlaw.com